IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | |
|---|---|
| JORGE LOPEZ, | ) **COMPLAINT** |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No: 1:25-cv-2611 |
| TD BANK USA | ) |
| & | ) |
| | ) **JURY TRIAL DEMANDED** |
| BRIDGESTONE AMERICAS D/B/A CREDIT FIRST NA | ) |
| & | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) |
| & | ) |
| EQUIFAX INFORMATION SERVICES, LLC | ) |
| & | ) |
| TRANS UNION, LLC | ) |
| Defendants. | ) |

**COMPLAINT AND JURY DEMAND**

COMES NOW, Plaintiff Jorge Lopez, by and through the undersigned counsel, and for his Complaint against Defendants TD Bank USA ("TDB"), Bridgestone Americas d/b/a Credit First NA ("CFNA"), Experian Information Solutions, Inc. ("EXP"), Equifax Information Services, LLC ("EQ") and Trans Union, LLC ("TU") (and together collectively, "Defendants") for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

**JURISDICTION**

1. This court has jurisdiction of the federal claim under 15 U.S.C. § 1681(p).

1

2. Venue is proper because EXP is headquartered in Cuyahoga County, Ohio, the acts and transactions occurred here, and TDB, CFNA, EXP, EQ, and TU transact business here.

3. Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4. Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5. Plaintiff resides in the city of Hallandale Beach, a part of Broward County, Florida 33009.

6. The acts that occurred giving rise to this complaint occurred while Defendant was headquartered in Ohio, making the Northern District of Ohio a proper venue under 28 U.S. Code § 1391(b)(2).

## STANDING

7. Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

8. Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

9. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm,

it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

## PARTIES

10. Plaintiff, Jorge Lopez (hereafter "Plaintiff"), is a natural person currently residing in Broward County, in the state of Florida.

11. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

12. Defendant TDB is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at PO Box 673, Minneapolis, MN 55440.

13. Defendant CFNA is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 6275 Eastland Rd., Brookpark, OH 44142.

14. Defendant EXP is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

15. Defendant EQ is a corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

16. Defendant TU is a corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

17. Defendants TDB and CFNA, are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

18. EXP, EQ, and TU are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(f)). EXP, EQ, and TU regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit

worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

  a. Public record information;

  b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

19. Plaintiff is a consumer who is the victim of inaccurate reporting by TDB, CFNA, EXP, EQ, and TU.

20. CRAs, including EXP, EQ, and TU have a duty under the FCRA to follow reasonable procedures to ensure that the consumer reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. §1681(e)(B).

21. Further, both CRAs and Furnishers have a duty to conduct reasonable investigations when notified of disputed information found in a consumer credit report.

22. Here, Plaintiff is a victim of inaccurate reporting regarding alleged accounts with TDB and CFNA, inaccuracies found in credit reports published by the CRA Defendants.

23. The following is a description of the inaccuracies and failures of all Defendants to investigate and update their reporting of the accounts in question.

24. In April 2025, Plaintiff discovered that the accounts he had with TDB and CFNA that were reporting on his credit file were being reported in error.

25. The TDB and CFNA accounts harmed the Plaintiff because each account does not accurately depict Plaintiff's credit history and creditworthiness.

26. That TDB was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

27. That TDB was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

28. On or about 04/04/25, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with TDB as disputed.

29. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

30. Plaintiff disputed the delinquent status of the account, and late payments.

31. Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case TDB.

32. EXP, EQ, and TU received the letters sent by Plaintiff.

33. EXP, EQ, and TU transmitted notice of these disputes to TDB via an Automated Credit Dispute Verification form ("ACDV").

34. TDB was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

35. Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to TDB after receiving notice of the disputes from Plaintiff.

36. Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to TDB after receiving notice of the disputes from Plaintiff.

37. After receiving this notice, in any subsequent voluntary reporting, TDB must then include the dispute notation on said account.

38. Defendant TDB re-reported the account to EXP and TU on 05/14/25.

39. Defendant TDB re-reported the account to EQ on 05/01/25.

40. On or about 06/06/25, Plaintiff received an updated credit file from EXP.

41. That the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to TDB.

5

42. Alternatively, that the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify TDB.

43. EXP failed to properly reinvestigate Plaintiff's dispute.

44. As a result of EXP's failure to reinvestigate, the updated 06/06/25 credit report contained inaccurate information.

45. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

46. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

47. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

48. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

49. On or about 06/06/25, Plaintiff received an updated credit file from EQ.

50. That the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to TDB.

51. Alternatively, that the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify TDB.

52. EQ failed to properly reinvestigate Plaintiff's dispute.

53. As a result of EQ's failure to reinvestigate, the updated 06/06/25 credit report contained inaccurate information.

54. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

55. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

56. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

57. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

58. On or about 06/06/25, Plaintiff received an updated credit file from TU.

59. That the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to TDB.

60. Alternatively, that the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify TDB.

61. TU failed to properly reinvestigate Plaintiff's dispute.

62. As a result of TU's failure to reinvestigate, the updated 06/06/25 credit report contained inaccurate information.

63. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

64. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

65. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

66. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

67. That the updated 06/06/25 credit report did not contain updated marked as disputed information.

68. The updated 06/06/25 credit report contained inaccurate information.

69. TDB failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the tradeline.

70. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

71. TDB must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

72. That TDB furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

73. That TDB failed to update the account information and mark the account as disputed on the updated 06/06/25 credit report after Plaintiff disputed the account on 04/04/25 and was given notice of such by EXP, EQ, and TU.

74. In the alternative, if TDB properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 06/06/25 credit report.

75. That TDB never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

76. Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from TDB in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

77. That CFNA was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

78. That CFNA was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

8

79. On or about 04/04/25, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with CFNA as disputed.

80. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

81. Plaintiff disputed the late payment remarks on the account.

82. Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CFNA.

83. EXP, EQ, and TU received the letters sent by Plaintiff.

84. EXP, EQ, and TU transmitted notice of these disputes to CFNA via an Automated Credit Dispute Verification form ("ACDV").

85. CFNA was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

86. Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to CFNA after receiving notice of the disputes from Plaintiff.

87. Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to CFNA after receiving notice of the disputes from Plaintiff.

88. After receiving this notice, in any subsequent voluntary reporting, CFNA must then include the dispute notation on said account.

89. Defendant CFNA re-reported the account to EXP and TU on 05/13/25.

90. Defendant CFNA re-reported the account to EQ on 05/01/25.

91. On or about 06/06/25, Plaintiff received an updated credit file from EXP.

92. That the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to CFNA.

93. Alternatively, that the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify CFNA.

94. EXP failed to properly reinvestigate Plaintiff's dispute.

95. As a result of EXP's failure to reinvestigate, the updated 06/06/25 credit report contained inaccurate information.

96. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

97. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

98. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

99. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

100. On or about 06/06/25, Plaintiff received an updated credit file from EQ.

101. That the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to CFNA.

102. Alternatively, that the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify CFNA.

103. EQ failed to properly reinvestigate Plaintiff's dispute.

104. As a result of EQ's failure to reinvestigate, the updated 06/06/25 credit report contained inaccurate information.

105. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

106. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

107. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

108. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

109. On or about 06/06/25, Plaintiff received an updated credit file from TU.

110. That the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to CFNA.

111. Alternatively, that the updated 06/06/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify CFNA.

112. TU failed to properly reinvestigate Plaintiff's dispute.

113. As a result of TU's failure to reinvestigate, the updated 06/06/25 credit report contained inaccurate information.

114. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

115. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

116. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

117. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

118. That the updated 06/06/25 credit report did not contain updated marked as disputed information.

119. The updated 06/06/25 credit report contained inaccurate information.

120. CFNA failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the tradeline.

121. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

122. CFNA must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

123. That CFNA furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

124. That CFNA failed to update the account information and mark the account as disputed on the updated 06/06/25 credit report after Plaintiff disputed the account on 04/04/25 and was given notice of such by EXP, EQ, and TU.

125. In the alternative, if CFNA properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 06/06/25 credit report.

126. That CFNA never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

127. Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CFNA in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

128. All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

129. The CRA Defendants' failure to report the Account correctly and failure to report the accurate status and accurate balance harmed Plaintiff's credit score and would, at least, mislead a third-party reviewing Plaintiff's credit history.

130. If the Furnishers had complied with their duties to reinvestigate the accounts when they received notice of the disputes, they would have conducted reasonable investigations and updated the information they were furnishing accordingly.

131. If the CRA Defendants would have complied with their statutory duties, inaccurate information concerning the accounts would not have been reported despite notice from Plaintiff.

132. Further, after receiving Plaintiff's disputes concerning the inaccurate information of the accounts, EXP, EQ, and TU are required to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit file(s) it published and maintained concerning Plaintiff.

133. Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the TDB and CFNA, and/or EXP, EQ, and TU.

134. Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading collection communications by TDB and CFNA, and/or EXP, EQ, and TU.

135. Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by TDB and CFNA, and/or EXP, EQ, and TU.

136. Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

137. Plaintiff's injury-in-fact is fairly traceable to the challenged representations of TDB and CFNA, and/or EXP, EQ, and TU.

138. Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

139. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

140. Plaintiff's credit report contained inaccurate information as it did not include a dispute notation even after Plaintiff disputed the accounts directly with EXP, EQ, and TU.

141. EXP, EQ, and TU failed to follow reasonable procedures to keep Plaintiff's credit file accurate by including incomplete information on Plaintiff's credit file; EXP, EQ, and TU failed to send notice of the disputes received from Plaintiff to the furnishers as required, and EXP, EQ, and TU failed to update Plaintiff's credit file to ensure accuracy; EXP, EQ, and TU violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

142. As a result of this conduct, action and inaction of EXP, EQ, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

143. EXP, EQ, and TU's conduct, action, and inaction were willful, rendering them liable for statutory damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

144. Due to EXP, EQ, and TU's conduct, Plaintiff is entitled to recovery costs and attorney's fees from EXP, EQ, and TU in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**CFNAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jorge Lopez, prays that this Court:

A. Declare that EXP, EQ, and TU's credit reporting actions violate the FCRA;

      B.     For EXP, EQ, and TU's willful violations, enter judgment in favor of Plaintiff Jorge Lopez, and against EXP, EQ, and TU, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

      C.     For EXP, EQ, and TU's negligent violations, enter judgment in favor of Plaintiff Jorge Lopez, and against EXP, EQ, and TU, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

      D.     Or, in the alternative, enter judgment in favor of Plaintiff Jorge Lopez, and against EXP, EQ, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

      E.     Grant other such further relief as deemed just and proper.

**Count II: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information**

145. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

146. EXP, EQ, and TU were reporting inaccurate and incomplete information on Plaintiff's credit report.

147. EXP, EQ, and TU's inaccurate and incomplete reporting of Plaintiff's credit file is misleading to the extent that it can adversely impact Plaintiff's credit decisions.

148. Plaintiff disputed the accuracy of his credit report directly with EXP, EQ, and TU via dispute letters sent through USPS.

149. Defendants EXP, EQ, and TU violated 15 U.S.C. § 1681 after failing to conduct lawful reinvestigations of Plaintiff's disputes and provide the furnishers with notice of Plaintiff's dispute.

150. EXP, EQ, and TU failed to report the status of the disputed accounts as disputed or delete the inaccuracy from Plaintiff's credit report after receiving notice of the disputes directly from Plaintiff.

151. Defendants EXP, EQ, and TU willfully or negligently violated 15 U.S.C. § 1681i by failing to forward all relevant information to TDB and CFNA; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable; and by publishing inaccurate information.

152. As a result of this conduct, action and inaction of EXP, EQ, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

153. EXP, EQ, and TU's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

154. The Plaintiff is entitled to recovery costs and attorney's fees from EXP, EQ, and TU in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **CFNAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jorge Lopez Prays that this Court:

    A.    Declare that EXP, EQ, and TU's credit reporting actions violate the FCRA;

    B.    Enter judgment in favor of Plaintiff Jorge Lopez, and against EXP, EQ, and TU, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

    C.    Or, in the alternative, enter judgment in favor of Plaintiff Jorge Lopez, and against EXP, EQ, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

    D.    Grant other such further relief as deemed just and proper.

**Count III: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute**

155.  Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

156.  Defendants TDB and CFNA violated 15 U.S.C. § 1681s-2(b) by continuing to report the TDB and CFNA, representations within Plaintiff's credit file with EXP, EQ, and TU without also including a notation that this tradeline was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the TDB and CFNA representations; by failing to review all relevant information regarding same; by failing to accurately respond to TDB and CFNA; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the TDB and CFNA representations to the consumer reporting agencies.

157.  As a result of this conduct, action and inaction of TDB and CFNA, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

158.  Defendants TDB and CFNA's, conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

159.  Plaintiff is entitled to recover costs and attorney's fees from TDB and CFNA, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**CFNAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jorge Lopez, Prays that this Court:

A.  Declare that TDB and CFNA's, credit reporting actions violate the FCRA;

      B.      Enter judgment in favor of Plaintiff Jorge Lopez, and against TDB and CFNA, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

      C.      Or, in the alternative, enter judgment in favor of Plaintiff Jorge Lopez, and against TDB and CFNA, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

      D.      Grant other such further relief as deemed just and proper.

## JURY DEMAND

160.  Plaintiff demands a trial by jury on all Counts so triable.

Dated: December 1, 2025

Respectfully Submitted,

**HALVORSEN KLOTE DAVIS**

By:  /s/ Seid Music

Seid Music, #76713
Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hkdlawstl.com
seid@hkdlawstl.com
*Attorneys for Plaintiff*